**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 7** |
| **CAROL BOTKIN NUCKOLES,** | |
| Debtor. | **Case No. 15-50904** |
| | |
| **CAROL BOTKIN NUCKOLES,** | **ECF Doc. Nos. 17, 19** |
| Plaintiff, | |
| v. | |
| **FORD MOTOR CREDIT COMPANY LLC,** | |
| Defendant. | |

**MEMORANDUM DECISION**

The question in this case is whether Ford Motor Credit Company LLC ("Ford") may enforce an *ipso facto* clause to repossess a vehicle when there is no payment or other contractual default and the bankruptcy court did not review a reaffirmation agreement prior to the debtor's discharge. For the reasons explained herein, the Court concludes that the *ipso facto* clause is unenforceable and Ford violated the discharge injunction.

**FINDINGS OF FACT**

The facts are undisputed. The debtor, Carol Botkin Nuckoles ("Nuckoles" or "debtor"), filed her chapter 7 petition for relief on September 23, 2015. On her Schedule D, Nuckoles disclosed Ford as a creditor secured by a title lien on her 2012 Ford Fusion sedan. The contract securing the loan contained an *ipso facto* provision, also known as a bankruptcy-default clause.[1] The *ipso facto* clause allowed Ford to declare Nuckoles in default because of her bankruptcy

---

[1] Neither party admitted the original contract into the record. The parties argued based on the premise that the contract contained an *ipso facto* clause.

petition. As a result, under the contract Ford could have repossessed the vehicle even if Nuckoles was current on all other obligations under the contract.[2] Contemporaneously with her petition, Nuckoles filed her chapter 7 statement of intention, indicating that she intended to retain her vehicle and reaffirm her debt to Ford pursuant to section 524(c) of the Bankruptcy Code.[3] ECF Doc. No. 1 at 6.

Soon after the debtor's petition date, Ford prepared a reaffirmation agreement ("Agreement") and delivered it to counsel for Nuckoles. The Agreement carried a presumption of undue hardship pursuant to section 524(m) due to the debtor's negative budget.[4] Nuckoles signed the Agreement on October 22, 2015, agreeing to reaffirm the debt on the original contract terms.[5] Although counsel for Nuckoles signed the Agreement, he refused to certify that it did not impose an undue hardship on the debtor or any dependent of the debtor.[6] On the same day, counsel for Nuckoles mailed the Agreement to counsel for Ford to sign and file with the Court.

After he reviewed the Agreement, counsels for Ford informed counsel for Nuckoles that the debtor's accompanying disclosures pursuant to section 524(k) were incomplete. ECF Doc. No 19-1 at 1. Counsel for Nuckoles responded with an email outlining his reasons for not completing the disclosures and requested that counsel for Ford sign and return the Agreement to

---

[2] *Ipso facto* clauses are unenforceable in some states, but they are not prohibited by Virginia law. Unlike other types of default, "the filing of a bankruptcy petition . . . cannot be cured." *DaimlerChrysler Fin. Servs. Ams., LLC v. Jones (In re Jones)*, 591 F.3d 308, 313 (4th Cir. 2010).

[3] Unless otherwise noted, all code citations referenced in this Memorandum Decision are to the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, as currently in effect.

[4] Including her car payment, Nuckoles has a monthly shortfall of around $125.

[5] The parties agree that the Agreement, which Ford prepared and Nuckoles endorsed, reflects the original contract terms. The contract requires Nuckoles to pay approximately $350 a month at an interest rate of 3.90%.

[6] Counsel for the debtor struck through the language in the Certification by Debtor's Attorney appearing above his signature that would have certified the Agreement did not impose an undue hardship.

2

him for filing if counsel for Ford was unwilling to file the Agreement with the Court.[7] Counsel for Ford wrote back that he would not endorse a reaffirmation agreement he considered to be materially deficient, and was unwilling to file same with the Court. *Id.* at 6.

In the end, Ford never endorsed the Agreement and did not return the Agreement to Nuckoles to file herself. Nuckoles received her chapter 7 discharge on January 12, 2016. The automatic stay terminated upon closure of the debtor's bankruptcy case the same day. At all times, Nuckoles remained current with her payments to Ford. Likewise, Nuckoles remained current with her automobile insurance. Without any warning, Ford repossessed the vehicle on February 2, 2016.

Within a week of the repossession, Nuckoles moved to reopen her case to initiate an action against Ford for violating the discharge injunction. The Court granted the debtor's motion to reopen her case. Nuckoles filed two actions: (1) a request to direct Ford to return her vehicle and (2) an action seeking sanctions for violations of the discharge injunction.

On February 17, 2016, the Court held a hearing on Nuckoles's demand that Ford return her vehicle. Nuckoles argued that Ford's repossession of her car violated the discharge injunction. Nuckoles relied on the language of the Bankruptcy Code and the holding of *In re Husain*, 364 B.R. 211 (Bankr. E.D. Va. 2007) in support of her position. Nuckoles asserted that because she timely agreed to reaffirm her debt to Ford, she had complied with her statutory obligations pursuant to sections 362(h) and 521(a), rendering Ford's *ipso facto* clause unenforceable.

In response, Ford insisted that the automatic stay had terminated as to the vehicle. As a result, Ford stated that its repossession was solely an *in rem* action authorized by the security

---

[7] Counsel for Nuckoles declined to execute the section 524(c)(3)(B) certification that Nuckoles could overcome the presumption of undue hardship and admitted that he was not in favor of the Agreement. ECF Doc. No. 19-1 at 3.

3

agreement and not an attempt to collect upon a discharged debt.[8]  At the hearing, Ford explained it understood section 362(h) to require a debtor to propose a reaffirmation agreement that could be approved.  Because the Court was certain to reject the Agreement, Ford argued Nuckoles failed to fulfill her duties pursuant to section 362(h).  By pursuing its *in rem* rights, Ford believed it had not run afoul of the discharge injunction and claimed the Court had no authority to order return of the vehicle.  At the conclusion of the hearing, the Court took the mater under advisement.

Nuckoles has maintained insurance on the vehicle and has never missed a payment to Ford—she was current pre-petition and remained current throughout the pendency of her bankruptcy case and post-discharge.

## JURISDICTION

The Court has jurisdiction over Nuckoles's bankruptcy case by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a), the delegation made to this Court by Order of Reference from the District Court entered on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia.  Through her motion, Nuckoles asserts a violation of the section 524 discharge injunction and seeks an order directing Ford to return her vehicle.  Both an allegation of a violation of the discharge injunction and whether section 521(d) allows Ford to enforce the contractual *ipso facto* clause involve "substantial questions of bankruptcy law" that impact the debtor's right "to retain and enjoy the use of the vehicle." *DaimlerChrysler Fin. Servs. Ams., LLC v. Jones (In re Jones)*, 397 B.R. 775, 782 (S.D. W. Va.

---

[8]    *See* Def.'s Resp. at 5–6, ECF Doc. No. 19 (arguing that by enforcing a valid lien that survived bankruptcy, Ford did not attempt to recover on debtor's personal liability and acted within its *in rem* rights as a secured creditor).  Counsel for Ford explained that Ford chose to repossess the car when Nuckoles was otherwise current because it was a business "decision made based on the debtor's failure to consummate the reaffirmation agreement." Tr. at 12; *see also id.* at 14 ("[T]he car was repossessed in Ford's business judgment after the case was closed, not on account of any personal liability, after a time when the automatic stay was no longer in effect."); *id.* at 20 ("But my understanding at this point is that [Ford was] relying on . . . the *ipso facto* provision and the fact that the debtor had not consummated the reaffirmation agreement as she stated her intent to do.").

4

2008), *aff'd*, 591 F.3d 308 (4th Cir. 2010); *accord Valley Historic Ltd. P'ship v. Bank of N. Y.*, 486 F.3d. 831, 835–36 (4th Cir. 2007). This matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(B) and (O).

## ANALYSIS

In the instant case, Ford repossessed the vehicle after Nuckoles received her chapter 7 discharge and the Court closed her case. The parties agree that Nuckoles timely filed her intent to reaffirm and timely entered into the Agreement, but that the Agreement was never filed with the Court. Ford further acknowledges that Nuckoles was current on all her contractual obligations and that its sole basis for repossessing her vehicle is the *ipso facto* clause. *See* Tr. at 19, ECF Doc. No. 23 ("[T]here is an *ipso facto* clause in the contract that Ford was relying upon."). What this case boils down to is this: did Nuckoles comply with sections 362(h) and 521(a) to void Ford's *ipso facto* clause even though the Agreement was never filed with the Court? If she did not, Nuckoles concedes that Ford's *ipso facto* clause remains enforceable.

Section 521(d) of the Bankruptcy Code "permits creditors to enforce *ipso facto* clauses in consumer loan agreements secured by personal property if the debtor fails to comply with the provisions of §§ 521(a)(6) or 362(h)." *DaimlerChrysler Fin. Servs. Ams., LLC v. Jones (In re Jones)*, 591 F.3d 308, 312 (4th Cir. 2010). The key point is that "[s]ection 521(d) gives Ford no substantive right to take action against the collateral. . . . Rather it removes the last remaining impediment under federal bankruptcy law to enforcement of an *ipso facto* clause that already exists." *Dumont v. Ford Motor Credit Co. (In re Dumont)*, 581 F.3d 1104, 1115 (9th Cir. 2009). By enacting section 521(d), Congress required debtors to do more than simply state their intent

to retain and continue to make payments on their personal property.[9] A debtor must now satisfy the additional requirements of sections 521(a) or 362(h), but if she does so, the relief afforded by section 521(d) is unavailable to her creditors.[10] Outside of section 521(d), the rule in the Fourth Circuit remains that "an *ipso facto clause* in an installment loan contract is unenforceable as a matter of law." *Jones*, 591 F.3d at 312 (citing *Riggs Nat'l Bank of Washington, D.C. v. Perry, (In re Perry)*, 729 F.2d 982, 985 (4th Cir. 1984)). The Fourth Circuit has not yet issued an opinion on whether a debtor's substantial compliance with sections 362(h) and 521(a) renders an *ipso facto* clause unenforceable. *See id.* at 311 n.3 (acknowledging the holdings of *In re Chim*, 381 B.R. 191 (Bankr. D. Md. 2008) and *Husain* without ruling if substantial compliance with the statutes is sufficient when the debtor "has been frustrated in his effort to fully comply"). The Court, however, is aware of no decision upholding the validity of an *ipso facto* clause after finding a debtor did all she could to comply with sections 362(h) and 521(a). After reviewing the relevant case law and the record, the Court concludes that Nuckoles's actions were sufficient under either section 362(h) or section 521(a) to void Ford's *ipso facto* clause.

Sections 362(h) and 521(a) mandate that the debtor must timely file her statement of intention and timely enter into a reaffirmation agreement. This is what the statute requires. Whether a court approves or disapproves of a reaffirmation agreement has no bearing on whether a debtor has "fully complied with all the pertinent requirements of Sections 362(h) and 521." *Chim*, 381 B.R. at 198; *accord Husain*, 364 B.R. at 219 ("The consequences arising from § 521(d) of the Bankruptcy Code are triggered upon a debtor's failure to enter into the

---

[9] This was known as the "ride-through" option. Prior to 2005, the courts were split on whether ride-though was available to debtors, with the Second, Third, Fourth, Ninth and Tenth Circuits allowing it. *See Jones*, 397 B.R. at 783–84 (discussing ride-though and collecting cases).

[10] Unlike section 362(h), section 521(a)(6) applies only when "a creditor has an allowed claim" from a purchase money security interest. 11 U.S.C. § 521(a)(6). Regardless of under which section a debtor seeks protection, a court's analysis of compliance is the same.

6

appropriate agreement, not by the court's disapproval of the agreement or by its determination that the agreement is unenforceable."). The result is that a debtor's satisfaction of her duties voids the *ipso facto* clause. *Chim*, 381 B.R. at 198; *Husain*, 364 B.R. at 219; *see also* 11 U.S.C. § 521(d) (allowing creditor to enforce *ipso facto* clause only "[i]f the debtor fails timely to take the action specified in subsection (a)(6) of this section or in paragraphs (1) and (2) of section 362(h)") .

"[W]hether the contract is enforceable is not within the debtor's control." *Coastal Fed. Credit Union v. Hardiman*, 398 B.R. 161, 182 (E.D.N.C. 2008) (collecting cases). It is axiomatic that a debtor has no more control over a court's approval of her reaffirmation agreement than she has over her creditor's willingness to sign it or her counsel's reluctance to certify the reaffirmation agreement does not impose an undue hardship. *See In re Hinson*, 352 B.R. 48, 52 (E.D.N.C. 2006) (enjoining repossession when debtor attempted to reaffirm on original terms but creditor refused to sign reaffirmation agreement because it wanted additional fees). Nothing in the text of sections 362(h) and 521(a) is contingent upon court approval of a reaffirmation agreement. *See Husain*, 364 B.R. at 219 ("The Court's approval or disapproval of the Agreements is immaterial in determining compliance with the 'performance' requirements.").

After depriving Nuckoles of the chance to file the Agreement with the Court, Ford cannot turn around and claim that she failed to comply with sections 362(h) and 521(a). *See In re Perkins*, 418 B.R. 680, 681–82 (Bankr. M.D.N.C. 2009) (voiding *ipso facto* clause when debtor "timely complied with the requirements of section 524(c) and 521(a)(2), and in all respects agreed to reaffirm the debt on the original terms of the contract," but creditor failed to timely file reaffirmation agreement). What is more, when a debtor has tried to reaffirm the underlying debt but was unable to secure court approval of the reaffirmation agreement, courts have unanimously

7

declared *ipso facto* provisions void and unenforceable.[11]  *Id.* at 682; *In re Baker*, 390 B.R. 524, 529–30 (Bankr. D. Del. 2008), *aff'd*, 400 B.R. 136 (D. Del. 2009); *Chim*, 381 B.R. at 199; *In re Moustafi*, 371 B.R. 434, 439 (Bankr. D. Ariz. 2007); *Husain*, 364 B.R. at 219; *In re Blakeley*, 363 B.R. 225, 232 (Bankr. D. Utah 2007); *In re Perez*, No. 7-10-11417 JA, 2010 WL 2737187, at *9 (Bankr. D.N.M. July 12, 2010).  Any claim by Ford that it believed it was insulated from the result in the aforementioned cases by the fact that the Court was destined to deem the Agreement unenforceable finds no support in the law.[12]  *See Husain*, 364 B.R. at 218 ("The

---

[11]  This Court's opinion in *In re Milby*, 389 B.R. 466 (Bankr. W.D. Va. 2008) is not to the contrary.  In *Milby*, the Court held a hearing on the reaffirmation agreement, but the debtor "made absolutely no effort to persuade the court to overrule a presumption of undue hardship." *Id.* at 469.  Judge Krumm held that under the facts before him, the debtor had not manifested good faith in his attempt to enter into a reaffirmation agreement "solely for the purpose of satisfying the statutory requirements necessary to restrain the [creditor] from exercising its *ipso facto* clause post-discharge." *Id.*

In the present case, counsel for Nuckoles stated that his client was prepared to explain how she would strive to overcome her budget shortfall.

> [M]y client would have said . . . yes I believe I can keep making the payments, it's very tight, but it's my only car, I need it to get to and from work, and the reason I signed this is because Ford motor Credit threatened to take my car . . . .  Whether that would have been sufficient to the Court, whether the Court would have had more questions for the debtor to answer . . . the Court was never given that chance . . . .

Tr. at 28.  Even if the Court found the debtor's good-faith explanation ineffective to overcome the presumption of undue hardship, it would have been sufficient to void the *ipso facto* clause. *See Chim*, 381 B.R. at 192–93 (pointing out that while "one of the Debtor's primary reasons for entering into the Reaffirmation Agreement" was her fear creditor would enforce the *ipso facto* clause, she also attempted to explain how she would be able to afford her car payment); *Husain*, 364 B.R. at 291 (concluding debtors attempted to reaffirm in good faith and prohibiting repossession despite unenforceability of reaffirmation agreements).  Determining if a debtor has entered into a reaffirmation agreement in good faith is a decision that must be made by a court and is not contingent upon a creditor's satisfaction with the sufficiency of the debtor's disclosures.

[12]  Counsel for Ford may have been correct in his conclusion that the Court could not approve the Agreement without counsel for Nuckoles having executed his section 524(c)(3)(B) certification.  Counsel for Ford, unfortunately, extended this principle too far in his concern about filing what he considered a defective pleading. *See* Tr. at 23 ("[W]e did not have a document that could be filed with the Court in any kind of good faith . . . .").  Without a certification by debtor's counsel, a court may disapprove a reaffirmation agreement without a hearing, but this does not prohibit a party from filing it in the first place.  By signing the Agreement, counsel for Ford would have acknowledged that Ford deemed the terms acceptable.  In no way would counsel's endorsement of the Agreement have attested to the veracity or sufficiency of the debtor's representations therein.  The Court, nevertheless, acknowledges counsel's efforts.  On nearly a dozen occasions, counsel for Ford contacted counsel for Nuckoles by way of emails, letters and telephone calls in order to present what he believed would be a satisfactory explanation in support of the Agreement.

8

Debtors' timely act of entering into mutually satisfactory reaffirmation Agreements with their creditors must be viewed as sufficient to satisfy the performance requirements of § 521(a). Those performance requirements should not be read as a mandate for debtors to entirely consummate their stated intentions."). The Court holds that Nuckoles complied with sections 362(h) and 521(a), rendering Ford's *ipso facto* clause void and unenforceable.

Cases reaching a contrary outcome are readily distinguishable. In every instance, the debtor either failed to file a statement of intention or did not attempt to reaffirm the debt. *See Jones*, 591 F.3d at 312 (affirming enforcement of *ipso facto* clause because debtor neither stated intent to reaffirm nor signed a reaffirmation agreement); *Dumont*, 581 F.3d at 1107, 1114 (explaining Ford's post-discharge repossession was valid because debtor rejected the offered reaffirmation agreement and thus automatic stay had terminated); *In re Anderson*, 348 B.R. 652, 658 (Bankr. D. Del. 2006) (upholding post-discharge repossession because debtors only filed a statement of intention and did not attempt to reaffirm); *In re Sanders*, No. 11-51240, 2012 WL 692549, at *1, 4 (Bankr. W.D. Tex. Mar. 2, 2012) (approving Ford's post-discharge repossession when debtors entered into and then rescinded reaffirmation agreement); *Almond v. Ford Motor Credit Co. (In re Almond)*, No. B-06-50324C-7W, Adv. P. No. 06-6089W, 2007 Bankr. LEXIS 1595, at *2, 7 (Bankr. M.D.N.C. May 7, 2007) (concluding Ford could repossess vehicle post-discharge because debtors never signed offered reaffirmation agreement).

---

The Court takes a moment to note that a debtor is not required to overcome the presumption of undue hardship in writing. Section 524(m) allows a debtor to rebut the presumption in writing, but she is not limited to this option. *See* 11 U.S.C. § 524(m)(1) ("The presumption may be rebutted in writing . . . ."); *see also In re Henderson*, 542 B.R. 537, 541 (Bankr. D. Nev. 2013) ("The debtor may rebut the presumption by identifying additional sources of funds to make the payments."). When the debtor's written explanation is insufficient, as it often is, a court must schedule a hearing to determine if the debtor is able to rebut the presumption "to the satisfaction of the court." 11 U.S.C. § 524(m)(1). Only after holding such a hearing may a court approve or disapprove of the proposed reaffirmation agreement. *See id.* ("[T]he court may disapprove such agreement. No agreement [that meets the requirements of section 524(c)] shall be disapproved without notice and a hearing to the debtor and creditor.").

9

The remaining question is whether Ford's repossession of the debtor's car infringed the discharge injunction. The bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). "Once the discharge is granted, the creditors may not repossess the vehicles without violating the discharge injunction unless there is a subsequent payment or insurance default" when a debtor complied with sections 362(h) and 521(a). *Husain*, 364 B.R. at 219; *accord Baker*, 390 B.R. at 526, 532; *Chim*, 381 B.R. at 199. The Court holds that Ford violated the discharge injunction by attempting to enforce an *ipso facto* clause that had been invalidated by bankruptcy law.

To the extent Ford argues that it could not have violated the discharge injunction by pursuing its *in rem* remedy against the debtor's vehicle,[13] the Court rejects this defense. Ford's repossession transformed into an *in personam* action against Nuckoles because Ford attempted to enforce a contractual provision voided during her bankruptcy. *See Baker*, 390 B.R. at 531–32 (holding Ford in contempt for violating section 524 by repossessing debtor's vehicle post-discharge through an invalid *ipso facto* clause). By ruling otherwise, the Court would be stripping portions of sections 362(h) and 521(a) of any meaning.[14] Based on the language of

---

[13] *See* Tr. at 12 (describing repossession as an "*in rem* remedy only not designed in any way to collect any amounts due that . . . Nuckoles . . . was personally liable for"); *id.* at 11, 20 (arguing Ford could have violated the discharge injunction only by "trying to collect a personal liability that was discharged in a bankruptcy case," but because "there was no debt to Ford that was discharged . . . there was no ability for [Ford] to violate any discharge injunction").

[14] Ford appears to argue that it may exercise control over the debtor's property after her discharge without violating the discharge injunction merely because it has a valid security interest even though there is no contractual default. By this reasoning, all the secured creditor would have to do is wait until discharge and then drive off with its collateral even if the debtor is current on all her contractual obligations. This would be an absurd result. *See Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304 (4th Cir. 2000), *aff'd sub nom*, *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002) (rejecting statutory interpretation that "results in an outcome that can truly be characterized as absurd"). If a creditor could pursue an *in rem* remedy post-discharge in the absence of any valid contractual default merely because of its security interest, parts of sections 362(h) and 521 would have no effect. Ford repossessed the vehicle because Nuckoles filed for bankruptcy protection. Ford has no contractual default and the contractual *ipso facto* clause is void. The discharge injunction prohibits Ford's repossession under such circumstances.

10

sections 362(h) and 521(a), the Court concludes that a creditor who repossesses personal property through an *ipso facto* clause that has been rendered unenforceable violates the discharge injunction.[15]

## CONCLUSION

For the foregoing reasons, the Court holds that Ford violated the discharge injunction by repossessing Nuckoles's vehicle after she did everything in her capacity to reaffirm her debt and was current on all her contractual obligations to Ford. In this case, because the debtor entered into an agreement to reaffirm her debt but the creditor prevented her from timely bringing the Agreement before the Court, the Court finds that Nuckoles complied with sections 362(h) and 521(a) and Ford's *ipso facto* clause is void.[16] The Court directs Ford to return the vehicle to Nuckoles immediately. At the hearing on Nuckoles's motion for contempt scheduled for March 16, 2016, the Court will determine whether sanctions against Ford are appropriate.

The Court will contemporaneously issue an Order consistent with the findings and ruling of this Memorandum Decision.

---

[15] Ford seems to confuse the concept of a valid lien with a valid *ipso facto* clause. *See* Def's Resp. at 5 (focusing on the longstanding principle that Ford's secured lien survived the debtor's bankruptcy). Ford retained its lien and accordingly its interest in the vehicle as security for repayment of the loan. Ford's *in rem* rights were protected because "[i]f the debtor does not default, the creditor receives the full benefit of the bargain despite bankruptcy." *Home Owners Funding Corp. of Am. v. Belanger (In re Belanger)*, 962 F.2d 345, 349 (4th Cir. 1992). Should Nuckoles breach the contract by "omitting payment, allowing insurance to lapse, or failing to maintain the collateral properly, the creditor can repossess the collateral and sell it" without running afoul of the discharge injunction. *Id.* Ford instead enforced an invalid *ipso facto* clause, a contractual term that had been annulled. In so doing Ford invented a default under the contract between the parties and seized property of the debtor to which it had no immediate claim because of bankruptcy law. The fact that Nuckoles received a discharge on her personal liability does not invalidate Ford's lien, nor does it revive an invalid *ipso facto* clause. "The bar to recovering any [personal] deficiency is the same after bankruptcy as it would have been had the collateral been sold during the bankruptcy proceedings." *Id.* (citation omitted).

[16] Nothing in this Memorandum Decision should be read to suggest that a debtor who agrees to reaffirm her debt but either negligently or intentionally fails to file a reaffirmation agreement with the court is entitled to the same protection.

11

The Clerk is directed to send electronic notification of the entry of this Memorandum Decision to counsel of record for Nuckoles and counsel of record for Ford.

Entered: March 9, 2016

Rebecca B. Connelly
U.S. Bankruptcy Judge

12